358 So.2d 1147 (1978)
Ivar BLACKER, Appellant,
v.
SHEARSON HAYDEN STONE, INC., Etc., et al., Appellees.
No. 77-123.
District Court of Appeal of Florida, Third District.
May 16, 1978.
Rehearing Denied June 15, 1978.
Cypen & Nevins, Miami Beach, for appellant.
Paul, Landy, Beiley & Yacos, Miami, for appellees.
Before PEARSON, HUBBART and KEHOE, JJ.
KEHOE, Judge.
Appellant, plaintiff below, brings this appeal from a final judgment for defendants [appellees] dismissing with prejudice the securities counts of a second amended complaint. We affirm.
Appellant filed his second amended complaint against appellees for damages based upon fraud, negligence, breach of contract and violations of state and federal securities laws. Upon appellees' motion, the trial court dismissed with prejudice all of the *1148 securities counts and entered final judgment thereon in favor of appellees. From the final judgment, appellant appeals.
As stated by appellant in his brief, the crux of the second amended complaint and of this appeal centers around paragraph 15 of the second amended complaint. This paragraph reads as follows:
"15. The program presented by defendants to plaintiff by which defendant TIGUE purchased and sold commodities on a discretionary basis, said program being the Straddles, constituted a `security' within the meaning of the Securities Act of 1933, Title 15 U.S.C. § 77b (1) and of § 517.02, Florida Statutes, in that plaintiff invested in a program relying solely on the efforts of defendants for his expected profit, plaintiff being only one of many investors who were offered and invested in defendant SHEARSON'S program relying on defendants' expertise for their expected profits. The offer and sale of the Straddles was made not only to plaintiff, but also to numerous other offerees and purchasers whose investment objectives were often comparable or similar to those of plaintiff. Defendant SHEARSON would not have engaged in the business of Straddles as described herein unless same were offered to and purchased by a number of investors. Thus, defendant SHEARSON'S plan of business was dependent upon the offering and sale of comparable services to members of the public having investment objectives appropriate for Straddles. Accordingly, the success of defendant SHEARSON'S plan of operations was dependent on the participation in a common enterprise by persons having common goals. Hence, defendants offered and sold to plaintiff the opportunity to invest in a common enterprise with the expectation of profits to be generated solely through the efforts of defendants. The investment scheme offered and sold to plaintiff was therefore a `security' in that it was an `investment contract' and/or an `interest in or under a profit-sharing agreement or scheme' and/or a participation in a device `commonly known as a security.'" [Emphasis added.]
Appellant contends that his second amended complaint stated a cause of action for violations of the state and federal securities laws.
Appellees contend that appellant's second amended complaint did not state a cause of action for violations of the state and federal securities laws, because his commodities straddles[1] account with appellees was not a security.
The dispositive question raised by this appeal is succinctly framed by the parties' contentions, i.e., was appellant's account with appellees a security under the state and federal securities laws. If the account was not a security under the state and federal securities laws, appellant's second amended complaint (Counts I-IV) did not state a cause of action and, therefore, were properly dismissed by the trial court. We believe that the correct answer to this question has been set forth in Milnarik v. M-S Commodities, Inc., 457 F.2d 274 (7th Cir.1972) [hereinafter cited as Milnarik].
In Milnarik the court was called upon to determine whether a discretionary brokerage account, nearly identical to the one in the instant case, was a security covered by the federal securities laws. Judge Stevens [now Justice Stevens] writing for the court in Milnarik stated:
"[j]udicial analyses of the question whether particular investment contracts *1149 are `securities' within the statutory definition have repeatedly stressed the significance of finding a common enterprise." Id. at 276.
* * * * * *
"We find the element of commonality absent here. Although the complaint does allege that Nelson entered into similar arrangements with other customers, the success or failure of those other contracts had no direct impact on the profitability of plaintiffs' contract. Nelson's various customers were represented by a common agent, but they were not joint participants in the same investment enterprise." Id. at 276-77.
* * * * * *
"We do not believe an investor who grants discretionary authority to his broker thereby joins the broker's other customers in the kind of common enterprise that would convert the agency relationship into a statutory security." Id. at 279.
Judge Stevens also quoted the following from the District Court's opinion:
"`In essence, this contract creates an agency-for-hire rather than constituting the sale of a unit of a larger enterprise. No matter how many different persons Nelson became an agent for under similar or even identical discretionary contracts, his relationship with each would remain as that of agent and principal. Each contract creating this relationship is unitary in nature and each will be a success or failure without regard to the others. Some may show a profit, some a loss, but they are independent of each other.'" Milnarik at 277 quoting Milnarik v. M-S Commodities, Inc., 320 F. Supp. 1149, 1151 (N.D.Ill. 1970).
In resolving the question before us of whether appellant's account with appellees was a security, we adopt the rationale of the Milnarik case and hold that the account was not a security under either our state or the federal securities laws. But cf. SEC v. Continental Commodities Corp., 497 F.2d 516 (5th Cir.1974) (discretionary options account). See generally SEC v. W.J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). Accordingly, the final judgment appealed should be affirmed. We note that this determination does not leave appellant without a remedy. Although we do not comment upon their merit, appellant may pursue his other causes of action for fraud, negligence, and breach of contract, as set forth in the second amended complaint.
Affirmed.
NOTES
[1] Appellees in their brief offer the following helpful definition of a straddle:

"A `straddle' is neither a commodities future nor an option, but rather a peculiar two-step transaction involving commodities futures. Specifically, a straddle is a simultaneous purchase and sale of commodities contracts on two different commodities exchanges for different prices. For instance, if a client were to request a broker to purchase silver for May delivery on the Chicago Board of Trade Exchange and simultaneously order the broker to sell silver for May delivery on the Commodity Exchange, Inc., New York, after following these instructions, the broker could be said to have invested in a straddle for the client."